UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KAREN CHRISEY and | : | |
| JEFFREY CHRISEY | : | |
| | : | |
| VS. | : | NO. 3:02CV1399(JCH) |
| | : | |
| LYNN M. LEWIS, | : | |
| DAVID PANDISCIA, | : | |
| JOSEPH CUSATO and | : | |
| KEVIN ANDERSON | : | MARCH 6, 2004 |

## PLAINTIFFS' TRIAL MEMORANDUM

### 1.   TRIAL COUNSEL

John R. Williams
Norman A. Pattis
Timothy Mahoney
Christy Doyle
Williams and Pattis, LLC
51 Elm Street
New Haven, CT 06510
203.562.9931
Fax: 203.776.9494
E-Mail: jrw@johnrwilliams.com

### 2.   JURISDICTION

This court has jurisdiction under the provisions of 28 U.S.C. §§ 1331, 1343(3)

and 1367(a) and 42 U.S.C. §§ 1983 and 1988.

### 3.   JURY/NON-JURY

This is a jury case.

**4.    NATURE OF CASE**

This is an action for false arrest and malicious prosecution in violation of the Fourth Amendment and state law.  The defendants are officers in the Connecticut State Police.

**5.    STIPULATIONS**

At all relevant times, the defendants were acting under color of law.

**6.    PLAINTIFFS' CONTENTIONS**

At approximately 7:40 a.m. on September 19, 2001, the defendants all assembled at the plaintiffs' home at 13 Ethan Allen Road in Litchfield to investigate a verbal dispute between the plaintiffs, who are married to each other and are the parents of young children.  The defendants thereupon forced their way into the plaintiffs' home without a warrant, without probable cause and in the absence of any exigent circumstances to excuse taking such action in the absence of a warrant, forced their way into a locked bathroom where the plaintiff Karen Chrisey was preparing for work, handcuffed both plaintiffs and dragged both of the plaintiffs out of their home in front of their children, placed them in squad cars and transported them to the aforesaid state police barracks for booking and processing and thereafter to the state courthouse in Bantam for arraignment on charges of disorderly conduct.  There was no warrant and no probable cause for either arrest and no exigent circumstances to excuse proceeding without arrest warrants. Property was seized from the plaintiffs at that time, without a warrant, some of which

the defendants have never returned. Defendant Lewis thereafter maliciously prepared a knowingly false series of police reports, to the truth of which she swore, and transmitted the said false reports to the Office of the State's Attorney at Bantam for the specific purpose of causing the plaintiffs to be prosecuted for crimes she knew they had not committed. As a result of the acts and omissions of the defendants described above, the plaintiffs suffered imprisonment, arrest, public humiliation, prosecution and court appearances as accused criminals, were required to expend a substantial sum of money for their defense against the said criminal charges, and suffered severe emotional distress. On January 16, 2002, the false charge against the plaintiff Jeffrey Chrisey was nolled by an Assistant State's Attorney in the Connecticut Superior Court at Bantam. On February 14, 2002, the false charge against the plaintiff Karen Chrisey was nolled by an Assistant State's Attorney in the Connecticut Superior Court at Bantam.

## 7.    DEFENDANTS' CONTENTIONS

The defendants deny violating any of the plaintiffs' rights and assert the affirmative defense of qualified immunity.

## 8.    LEGAL ISSUES

1. Were the plaintiffs arrested without probable cause?

2. Were the plaintiffs the victims of malicious prosecution as defined either by the Fourth Amendment or by Connecticut common law?

3.  Is any defendant entitled to the benefit of the affirmative defense of qualified immunity?

**9.    *VOIR DIRE QUESTIONS***

1.  This is a lawsuit for civil rights violations brought by citizens against police officers.  Is there any reason why you would have difficulty being completely neutral and fair in deciding this case if you are chosen to serve on the jury?

2.  Is there anyone here who would prefer not to sit on a jury concerning a case of this kind?

3.  Does anyone here feel for any reason that citizens who believe that they have been treated illegally and unfairly should not bring suit against police officers? If so, please explain.

4.  Have you or anyone close to you ever been employed as a policeman or by any law enforcement agency in any capacity?  If so, please explain.

5.  Have you or anyone close to you ever been employed by any municipality in the State of Connecticut?

6.  Has anyone here or anyone close to you ever been employed by any other Governmental unit in the State of Connecticut or elsewhere?

7.  Do you know or have you read anything or heard anything about this case, the plaintiff or the defendants or any of the lawyers involved in the case?

8.  Has anyone here ever served as an appointed or elected official of state, city or local Government?

9.  Has anyone here or anyone close to you ever been involved in any political campaigns or elections in the State of Connecticut?

10.  Has anyone here or any close to you ever been employed by an attorney?

11.  Would you for any reason tend to favor one side or the other in this case or in regard to the evidence which may be presented?

12.  Other things being equal, would you tend to trust or believe the testimony of a police officer more or less than that of an ordinary citizen merely because the testimony came from a police officer?

13.  Does anyone here have any feeling that the testimony of a police officer is entitled to greater or lesser weight or believability than that of a civilian?

14.  Have you or anyone close to you ever been the victim of a crime?

15.  Does anyone here belong to any club or organization which in any way is interested in the enforcement or the change of any law or laws or which is in any other way concerned with policemen or law enforcement?

16.  Have you or anyone close to you ever been arrested?

17.  Has anyone here ever witnessed an arrest?

18.  Have you, or has anyone close to you, ever been a party to a lawsuit?  If so, please explain.

19.  Where are you employed?

20.  If you are married, is your spouse connected in any way with any police department or other law enforcement agency or is he or she employed by any municipality?

**10.    PLAINTIFFS' WITNESSES**

1.  The plaintiff Karen Chrisey will testify concerning all issues in this case.

2.  The plaintiff Jeffrey Chrisey will testify concerning all issues in this case.

3.  Defendant Lynn Lewis will testify concerning her actions and the report she prepared.

4.  Defendant David Pandiscia will testify concerning the actions of all defendants.

5.  Defendant Joseph Cusato will testify concerning the actions of all defendants.

6.  Defendant Kevin Anderson will testify concerning the actions of all defendants.

7.  Arietta Slade, Ph.D., 8 Hodge Road, Roxbury, Connecticut, will testify concerning her treatment of the plaintiff Karen Chrisey and the fees charged.

8.  John P. Ewing, M.D., 8 Titus Road, Washington Depot, Connecticut, will testify concerning his treatment of the plaintiff Karen Chrisey and the fees charged.

**11.    EXHIBITS**

1.  Mug shot of plaintiff Jeffrey Chrisey.

6

2.  Mug shot of plaintiff Karen Chrisey.

3.  Notice of Rights - Jeffrey Chrisey.

4.  Notice of Rights - Karen Chrisey.

5.  Personal Property Inventory & Prisoner Processing Form.

6.  CSSD Case Data Record.

7.  Family Violence Offense Report.

8.  Police report concerning both plaintiffs.

9.  Police report concerning plaintiff Jeffrey Chrisey.

10.  Photograph of injury to plaintiff Karen Chrisey.

11.  Torrington *Register-Citizen* article concerning plaintiffs' arrest.

12.  Bill from Dr. Ewing.

13.  Bill from Dr. Slade.

14.  Letter from Dr. Slade dated 2/11/02.

15.  Transcript of 1/16/02 court proceedings in *State v. Jeffrey Chrisey.*

16.  Transcript of 2/14/02 court proceedings in *State v. Karen Chrisey.*

## 12.   *DEPOSITION TESTIMONY*

Depending upon her availability, plaintiff's may offer the deposition testimony of Dr. Slade.

**13.     REQUESTS FOR JURY INSTRUCTIONS**

1.   The plaintiffs have brought this lawsuit to obtain redress for what they contend were violations of their rights under the United States Constitution, specifically their right to be free from false arrest and malicious prosecution. Federal law provides that any individual may seek redress in this Court, by way of money damages, against any person or persons who, under color of State law, deprive that individual of any of his constitutional rights.  "Acting under color of law" means "under pretense of law," and simply means acting in one's capacity as, in this case, police officers.  In this case, the parties have stipulated that the defendants were acting under color of law, so you need not concern yourselves with that issue. [Monroe v. Pape, 365 U.S. 167 (1961); Pitchell v. Callan, 13 F.3d 545 (2d Cir. 1994); Conner v. Donnelly, 42 F.3d 220 (4th Cir. 1994); Stengel v. Belcher, 522 F.2d 438, 441 (6th Cir. 1975).]

2.   It is not necessary to find that the defendants had any specific intent to deprive the plaintiffs of their civil rights in order to find in favor of the plaintiffs.  The plaintiffs win this case if the defendants intended the actions which resulted in the violation of the plaintiffs' rights or if the defendants acted in reckless disregard of the plaintiffs' rights.  Reckless disregard of the plaintiffs' rights simply means not caring whether or not those rights were being violated.  [Merriwether v. Coughlin, 879 F.2d 1037 (2d Cir. 1989); Bordanaro v. McLeod, 871 F.2d 1151, 1164 (1st Cir. 1989);

Stengel v. Belcher, 522 F.2d 438 (6th Cir. 1975); Gregory v. City of Rogers, 921
F.2d 750, 755-57 (8th Cir. 1990) (Timbers, J.); Wood v. Ostrander, 879 F.2d 583
(9th Cir. 1989); Caballero v. City of Concord, 956 F.2d 204 (9th Cir. 1992); Presnick
v. Santoro, 832 F. Supp. 521, 528 (D. Conn. 1993) (Cabranes, J.).]

    3.  The testimony of a police officer is entitled to no special or exclusive
sanctity.  An officer who takes the witness stand subjects his or her testimony to the
same examination and the same tests that any other witness does and in the case
of police officers you should not believe them merely because they are so
employed.  You should recall their demeanor on the stand, their manner of
testifying, the substance of their testimony, and weigh and balance it just as
carefully as you would the testimony of any other witness.  People employed by the
government, including police officers, do not stand in any higher station in the
community than other persons, and their testimony is not entitled to any greater
weight. [Wright & Havanich, CONN. JURY INSTRUCTIONS, (2d Ed.) §667.]

    4.  If you find that the defendants are liable to the plaintiffs on any of the
grounds advanced in this lawsuit, you should then consider the question of
damages.  There are essentially two kinds of damages which can be awarded in a
lawsuit -- compensatory damages and punitive damages.  Compensatory damages
are designed to compensate the plaintiffs for injuries suffered by the plaintiffs.
These injuries include money actually spent or debts incurred as a result of the

injury, as well as emotional anguish, impairment of reputation, personal humiliation, and other suffering.  In fixing compensatory damages you should determine the amount of money which will, in your judgment, reasonably and fairly compensate the plaintiffs for any harm of any kind which was proximately caused by the wrongful conduct of the defendants.  Among the elements of injury and harm for which compensation may be awarded are:

a)  The physical harm to the plaintiffs during and after the impairment or injury received, including imprisonment and loss of freedom;

b)  The emotional harm to the plaintiffs during and after the impairment or injury received, including emotional distress or pain, humiliation, personal indignity, embarrassment, fear, anxiety and/or anguish which the plaintiffs have suffered or may with reasonable certainty be expected to suffer in the future;

c)  Lost wages or earnings;

d)  Attorney fees or other expenses and costs of legal representation;

e)  Medical bills or expenses.

Actual loss is not limited to expenses or debts incurred.  Injuries of any kind are to be fully and fairly compensated if they are proximately caused by the constitutional violation.  You should award damages in such a case to the extent that the loss or injury can be reasonably quantifiable and not simply on the basis of the inherent value of the rights violated.  The damages you award should be proportional to the

actual loss sustained, whether that loss is physical or mental or emotional or one of the other types of loss I have previously discussed with you.  [Memphis Community School District v. Stachura, 477 U.S. 299 (1986); Wheatley v. Beetar, 637 F.2d 863, 865-68 (2d Cir. 1981); Ellis v. Blum, 643 F.2d 68, 82-84 (2d Cir. 1981); Walters v. City of Atlanta, 803 F.2d 1135 (11th Cir. 1986); Johnson v. Franklin, 112 Conn. 228, 229, 152 Atl. 64 (1930); Childs v. Bainer, 35 Conn. App. 301, 304 (1994); Creem v. Cicero, 12 Conn. App. 607, 611, 533 A.2d 234 (1987); Jeffries v. Johnson, 27 Conn. App. 471, 476, 607 A.2d 443 (1992).]

     5.   You may also decide whether the plaintiffs are entitled to the award of any punitive damages.  In a case like this one, you may consider whether acts or omissions of the defendants, or any of them, if you find them to have been proved, were so serious that the defendant or defendants should pay a penalty so that in the future others will be deterred from engaging in the same conduct.  Whether you decide to award any punitive damages should be based on whether you find that the defendant engaged in any one of the following things:

     1)  Willful or malicious violation of the constitutional rights of the plaintiff;

     2)  Any intentional act by the defendant in gross disregard of the rights of the plaintiff;

     3)  Reckless disregard by the defendant of whether or not he was violating the rights of the plaintiff.

11

If you find any one of these three things to have been proven, then you should award punitive damages.  [Smith v. Wade, 461 U.S. 30 (1983); Stolberg v. Board of Trustees, 474 F.2d 489 (2d Cir. 1973); McFadden v. Sanchez, 710 F.2d 907 (2d Cir. 1983); Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989); Larez v. City of Los Angeles, 946 F.2d 630, 648-49 (9th Cir. 1991); Wright v. Sheppard, 919 F.2d 665, 670-73 (11th Cir. 1990).]

    6.   The purpose of punitive damages awards is both punishment and deterrence, and in deciding whether to award punitive damages and, if so, fixing the amount of such damages, the jury acts as the conscience of the community.  In fixing the amount of punitive damages, it is appropriate for the jury to consider all of the same factors which a trial judge would consider in imposing sentence in a criminal case.  These factors include the behavior of the defendant at trial and his or her apparent lack of genuine repentance for the misconduct in question, if you find such to be the case.  [Hall v. Ochs, 817 F.2d 920 (1st Cir. 1987); Rowlett v. Anheuser-Busch, Inc., 832 F.2d 194 (1st Cir. 1987); O'Neill v. Krzeminski, 839 F.2d 9 (2d Cir. 1988); Zarcone v. Perry, 572 F.2d 52 (2d Cir. 1978).]

    7.   Police officers have an affirmative duty to enforce the law and preserve the peace.  This includes stopping other police officers from violating the law.  A police officer may not ignore the duty imposed by his office and fail to stop other officers who illegally arrest a third person in his presence.  Thus, if you find that any

police officer, whether or not named as a defendant, violated any of the civil rights of the plaintiffs, and that any defendant did nothing to prevent it, although in a position to do so, then the defendant himself or herself is liable for that unlawful act. [Gagnon v. Ball, 696 F.2d 17 (2d Cir. 1982); Zapico v. Bucyrus-Erie Co., 579 F.2d 714, 718 (2d Cir. 1978); Bruner v. Dunaway, 684 F.2d 422 (6th Cir 1982); Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972).]

     8.   When two or more persons unite in an act which constitutes a wrong to another, intending at the time to commit it, or performing it under circumstances which fairly charge them with intending the consequences which follow, they incur a joint and several liability for the acts of each and all of the joint participants.  The law does not require the injured party to establish how much of the injury was done by one person and how much of the injury was done by another.  Rather, it permits the injured party to treat all concerned in the injury jointly and all are liable to respond to the plaintiff in a total sum as damages.  All those who actively participate in a wrongful act, by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts for their benefit, are equally liable with him. Express agreement is not necessary, and all that is required is that there should be a common design or understanding, even though it be a tacit one.  [Prosser, Law of Torts, Section 46, pp. 291-95 (4th Ed. 1971); Gagnon v. Ball, 696 F.2d 17 (2d Cir. 1982).]

9.   Conduct of a defendant, including statements knowingly made and acts knowingly done after an allegedly wrongful act, may be considered by the jury in the light of all other evidence in the case in determining whether or not the defendant has acted wrongfully.  When a defendant voluntarily and intentionally offers an explanation, or makes some statement tending to show his innocence, and this explanation or statement is later shown to be false, the jury may consider whether this circumstantial evidence points to a consciousness of wrongdoing.  Ordinarily, it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his innocence. Whether or not evidence as to a defendant's voluntary explanation or statement points to a consciousness of wrongdoing or a consciousness of guilt, and the significance to be attached to any such evidence, are matters exclusively within the province of the jury.  A statement or act is "knowingly" done, it made or done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.   [Fernandez v. Fitzgerald, 711 F.2d 485 (2d Cir. 1983); United States v. McDougald, 650 F.2d 532 (4th Cir. 1982); Government of Virgin Islands v. Testamark, 570 F.2d 1162 (3d Cir 1978); United States v. Barresi, 601 F.2d 193 (5th Cir. 1979); United States v. Wood, 550 F.2d 435 (9th Cir. 1976); Opper v. United States, 348 U.S. 84, 92 (1954); Wilson v. United States, 162 U.S. 613, 620-

21 (1896); <u>United States v. DeAlesandro</u>, 361 F.2d 694, 697-98 (2d Cir. 1966), <u>cert</u>. <u>denied</u>, 385 U.S. 842 (1967).]

10.  If you find that the defendant not only made a false statement or explanation tending to show his innocence, but has made that statement to a law enforcement officer, then you may consider that to be evidence not only of the defendant's consciousness of his own wrongdoing but independent evidence that in fact he did violate the plaintiff' rights in the manner alleged in the Complaint.  False exculpatory statements made to law enforcement officials are circumstantial evidence and have independent probative force.  In other words, if you find that a defendant has knowingly made a false statement to a law enforcement officer, which if true would have tended to establish the innocence of the defendant, you may consider that false statement as independent evidence that the defendant actually committed the constitutional violation alleged in the Complaint.  [<u>United States v. Durrani</u>, 835 F.2d 410, 424 (2d Cir. 1987).]

11.  A person, even if he or she is being lawfully arrested, has a constitutional right to have that arrest made in a reasonable manner.  A police officer is not allowed to behave unreasonably when making even a lawful arrest.  The officer may take only such steps and use only such procedures as a reasonable and trained police officer would believe is required to take an arrested citizen into custody, for the particular charges and under the particular circumstances presented by this

case.  A police officer may do no more than that.  In determining whether a

defendant police officer has acted unreasonably in the course of making an

otherwise lawful arrest, you should consider all of the facts which you find to have

been proven in the case, including the need if any for undertaking the particular

procedures that were involved and the relationship between those procedures and

the extent of the injury which was inflicted upon the plaintiff by the officers.  [Graham

v. Connor, 490 U.S. 386 (1989); Miller v. Lovett, 879 F.2d 1066 (2d Cir. 1989);

Finnegan v. Fountain, 915 F.2d 817 (2d Cir. 1990).]

        12.  A police officer may not arrest a person without an arrest warrant unless

he has probable cause to believe that a crime has been committed and that the

person in question has committed that crime.  Probable cause exists if the facts and

circumstances known to the defendant, or of which he had reasonably trustworthy

information, are sufficient to warrant a prudent police officer in believing that the

suspect has committed a crime.  The hunch, guess, conjecture or surmise of an

officer is not enough, and there must be enough actual evidence to lead reasonably

to the conclusion that the suspect has committed a crime.  Thus, if you find that the

defendant arrested the plaintiff without probable cause, you must find the defendant

liable for a violation of the plaintiff's constitutional rights.  [Dunaway v. New York,

442 US. 200 (1979); Brown v. Texas, 443 U.S. 47 (1979); Henry v. United States,

361 U.S. 98 (1959); Brinegar v. United States, 338 U.S. 160, 175-76 (1949); Thamel

v. Town of East Hartford, 373 F.Supp. 455 (D.Conn. 1974) (Newman, J.).]

13. If a police officer files a false report and that report results in the

prosecution of an individual, then the officer violated the constitutional right of the

person reported on. Therefore, if you find that a defendant here made a material

false statement in an arrest report or omitted material evidence from the report, and

the false statements in, or material omissions from, that report caused the

prosecution of the plaintiffs, then the defendant is liable to the plaintiffs. [Franks v.

Delaware, 438 U.S. 154 (1978); Golino v. City of New Haven, 950 F.2d 864, 870-72

(2d Cir. 1991); White v. Frank, 855 F.2d 956 (2d Cir. 1988); Stadium Films v.

Baillargeon, 542 F.2d 577 (1st Cir. 1976); McCune v. City of Grand Rapids, 842

F.2d 903, 907 (6th Cir. 1988); Hampton v. Hanrahan, 600 F.2d 600 (7th Cir. 1979).]

14. A supervisory officer may be held liable for a violation of the plaintiffs'

rights if his own conduct was a proximate cause of the violation. A supervisory

officer subjects a person to a violation of his or her constitutional rights if he (1) does

an affirmative act, or (2) participates or acquiesces in another's affirmative act, or (3)

omits to do something which he is required to do, and that act or omission causes

the violation of which the plaintiff have complained. Personal participation in the

immediate act which violated the plaintiff's rights is not required. It is sufficient if the

supervisor sets in motion a series of acts by others, or knowingly refuses to

terminate a series of acts by others, which he knows or reasonably should know would cause others to inflict the constitutional injury.  [Johnson v. Duffy, 588 F.2d 740 (9th Cir. 1978); McClelland v. Facteau, 610 F.2d 693 (10th Cir. 1979); Sims v. Adams, 537 F.2d 829 (5th Cir. 1976).]

     15.  To prevail on a claim of malicious prosecution, four elements must be shown:  (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiff's favor. [Ricciuti v. New York City Transit Authority, 124 F.3d 123, 130 (2d Cir. 1997) Rohman v. New York City Transit Authority, 215 F.3d 208, 215-16 (2d Cir. 2000);Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991); Bonide Products, Inc. v. Cahill, 223 F.3d 141, 145 (2d Cir. 2000).]

     16.  The probable cause determination relevant to a malicious prosecution claim differs from that relevant to a false arrest claim.  First, in a malicious prosecution action, the relevant probable cause determination is whether there was probable cause to believe the criminal proceeding could succeed and, hence, should be commenced.  This determination is distinct from the question of whether there was probable cause for the arrest or stop, though a lack of probable cause to believe the plaintiff committed the crime in question necessarily entails a lack of probable cause to commence a proceeding against him or her.  Second, the

existence, or lack, of probable cause is measured at a different point in time in a malicious prosecution action than a false arrest action.  In a malicious prosecution claim, the existence, or lack, of probable cause is measured as of the time the judicial proceeding is commenced by the filing of criminal charges, not at the time of the preceding warrantless arrest. [Kinzer v. Jackson, 316 F.3d 139, 144 (2d Cir. 2003); Posr v. Court Officer Shield # 207, 180 F.3d 409, 417 (2d Cir. 1999); Mejia v. City of New York, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000) (Trager, J.).]

17.  As I stated previously, one of the necessary elements of malicious prosecution is proof of actual malice.  Ordinarily, malice is proven by the lack of probable cause for either the arrest or the prosecution.  [Ricciuti v. New York City Transit Authority, 124 F.3d 123, 131 (2d Cir. 1997); Lowth v. Town of Cheektowaga, 82 F.3d 563, 566 (2d Cir. 1996); Cox v. County of Suffolk, 827 F. Supp. 935 (E.D.N.Y. 1993) (Wexler, J.); Tveraas v. Coffey, 818 F. Supp. 75 (D. Vt. 1993) (Parker, C.J.).]

18.  The final element of a malicious prosecution claim is that the prosecution have terminated favorably to the plaintiff.  I instruct you that in this case the prosecution of both plaintiffs did terminate favorably to them. [Russo v. City of Hartford, 184 F. Supp. 2d 169, 185-86 (D. Conn. 2002) (Hall, J.); See v. Gosselin, 133 Conn. 158, 48 A.2d 560 (1946); Murphy v. Lynn, 118 F.3d 938, 950-51 (2d Cir. 1997); Posr v. Court Officer Shield #207, 180 F.3d 409, 417-48 (2d Cir. 1999);

Robers v. City of Amsterdam, 303 F.3d 155 (2d Cir. 2002); Bordeau v. Village of Deposit, 113 F. Supp. 2d 292 (N.D.N.Y. 2000) (Hurd, J.).]

19.  In Connecticut, the word nolle is a shortened version of the legal term nolle prosequi, which means literally "I will not prosecute."  A nolle prosequi is a formal entry upon the record by the prosecuting attorney, declaring that he or she will not prosecute the case any further.  (Black's Law Dictionary 1198 (Rev., 4th Ed. 1968); Cann, Nolle Prosequi in Connecticut, 4 CONN. L. REV. 117, 118 (1971).] The entry of a nolle prosequi terminates the prosecution and requires that the defendant be released from custody.  [Conn. Practice Book §727].  In 1781, the Connecticut Supreme Court defined a nolle prosequi in this way:  "Where the State's Attorney enters a nolle it is to be intended that there was no cause of action; and it is more conclusive than an acquittal of the Grand Jury."  [State v. Stanley, 2 Kirby 25 (1787).]

**14.   ANTICIPATED EVIDENTIARY PROBLEMS**

None.

**15.   PROPOSED FINDINGS AND CONCLUSIONS**

Not applicable.

**16.   TRIAL TIME**

Three days.

**17.    FURTHER PROCEEDINGS**

None.

**18.    ELECTION FOR TRIAL BY MAGISTRATE**

Not made.

**19.    OTHER MATTERS**

**A.    PROPOSED JURY INTERROGATORIES**

1.  Did defendant Lewis falsely arrest the plaintiff Karen Chrisey?

Yes_____        No_____

2.  Did defendant Pandiscia falsely arrest the plaintiff Karen Chrisey?

Yes_____        No_____

3.  Did defendant Cusato falsely arrest the plaintiff Karen Chrisey?

Yes_____        No_____

4.  Did defendant Anderson falsely arrest the plaintiff Karen Chrisey?

Yes_____        No_____

5.  If you have answered "yes" to any of the foregoing questions, what amount of money do you award the plaintiff Karen Chrisey to compensate her for false arrest?

$_____

6.  If you answered "yes" to Question 1, what amount of punitive damages, if any, should defendant Lewis pay to Karen Chrisey for falsely arresting her?

$_____

7.  If you answered "yes" to Question 2, what amount of punitive damages, if any, should defendant Pandiscia pay to Karen Chrisey for falsely arresting her?

$_____

8.  If you answered "yes" to Question 3, what amount of punitive damages, if any, should defendant Cusato pay to Karen Chrisey for falsely arresting her?

$_____

9.  If you answered "yes" to Question 4, what amount of punitive damages, if any, should defendant Anderson pay to Karen Chrisey for falsely arresting her?

$_____

10.  Did defendant Lewis maliciously prosecute the plaintiff Karen Chrisey?

Yes_____                No_____

11.  Did defendant Pandiscia maliciously prosecute the plaintiff Karen Chrisey?

Yes_____                No_____

12.  Did defendant Cusato maliciously prosecute the plaintiff Karen Chrisey?

Yes_____                No_____

13.  Did defendant Anderson maliciously prosecute the plaintiff Karen Chrisey?

Yes_____          No_____

14.  If you answered "yes" to any one or more of Questions 10, 11, 12 or 13, what amount of money to you award the plaintiff Karen Chrisey to compensate her for being the victim of malicious prosecution?

$_____

15.  If you answered "yes" to Question 10, what amount of punitive damages, if any, should defendant Lewis pay to the plaintiff Karen Chrisey for maliciously prosecuting her?

$_____

16.  If you answered "yes" to Question 11, what amount of punitive damages, if any, should defendant Pandiscia pay to the plaintiff Karen Chrisey for maliciously prosecuting her?

$_____

17.  If you answered "yes" to Question 12, what amount of punitive damages, if any, should defendant Cusato pay to the plaintiff Karen Chrisey for maliciously prosecuting her?

$_____

18.  If you answered "yes" to Question 13, what amount of punitive damages, if any, should defendant Anderson pay to the plaintiff Karen Chrisey for maliciously prosecuting her?

$_____

19.  Did defendant Lewis falsely arrest the plaintiff Jeffrey Chrisey?

Yes_____            No_____

20.  Did defendant Pandiscia falsely arrest the plaintiff Jeffrey Chrisey?

Yes_____            No_____

21.  Did defendant Cusato falsely arrest the plaintiff Jeffrey Chrisey?

Yes_____            No_____

22.  Did defendant Anderson falsely arrest the plaintiff Jeffrey Chrisey?

Yes_____            No_____

23.  If you have answered "yes" to any one or more of questions 19 through 23, what amount of money do you award the plaintiff Jeffrey Chrisey to compensate him for false arrest?

$_____

24.  If you answered "yes" to Question 19, what amount of punitive damages, if any, should defendant Lewis pay to Jeffrey Chrisey for falsely arresting him?

$_____

25.  If you answered "yes" to Question 20, what amount of punitive damages, if any, should defendant Pandiscia pay to Jeffrey Chrisey for falsely arresting him?

$_____

26.  If you answered "yes" to Question 21, what amount of punitive damages, if any, should defendant Cusato pay to Jeffrey Chrisey for falsely arresting him?

$_____

27.  If you answered "yes" to Question 22, what amount of punitive damages, if any, should defendant Anderson pay to Jeffrey Chrisey for falsely arresting him?

$_____

28.  Did defendant Lewis maliciously prosecute the plaintiff Jeffrey Chrisey?

Yes_____          No_____

29.  Did defendant Pandiscia maliciously prosecute the plaintiff Jeffrey Chrisey?

Yes_____          No_____

30.  Did defendant Cusato maliciously prosecute the plaintiff Jeffrey Chrisey?

Yes_____          No_____

31.  Did defendant Anderson maliciously prosecute the plaintiff Jeffrey Chrisey?

Yes_____          No_____

32.  If you answered "yes" to any one or more of Questions 28, 29, 30 or 31, what amount of money to you award the plaintiff Jeffrey Chrisey to compensate him for being the victim of malicious prosecution?

$_____

33.  If you answered "yes" to Question 28, what amount of punitive damages, if any, should defendant Lewis pay to the plaintiff Jeffrey Chrisey for maliciously prosecuting him?

$_____

34.  If you answered "yes" to Question 29, what amount of punitive damages, if any, should defendant Pandiscia pay to the plaintiff Jeffrey Chrisey for maliciously prosecuting him?

$_____

35.  If you answered "yes" to Question 30, what amount of punitive damages, if any, should defendant Cusato pay to the plaintiff Jeffrey Chrisey for maliciously prosecuting him?

$_____

36.  If you answered "yes" to Question 31, what amount of punitive damages, if any, should defendant Anderson pay to the plaintiff Jeffrey Chrisey for maliciously prosecuting him?

$_____

**B.     PROPOSED OPENING STATEMENT**

The plaintiffs request that opening statements by the attorneys be permitted.


THE PLAINTIFFS


BY:_____
JOHN R. WILLIAMS (ct00215)
51 Elm Street
New Haven, CT 06510
203/562-9931
FAX:  203/776-9494
E-Mail: jrw@johnrwilliams.com
Their Attorney


CERTIFICATION OF SERVICE

On the date above stated, a copy hereof was mailed to Stephen R. Sarnoski, Esq., Assistant Attorney General, 110 Sherman Street, Hartford, CT 06105, and forwarded to him electronically at: stephen.sarnoski@po.state.ct.us


_____
JOHN R. WILLIAMS